IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GREAT LAKES REINSURANCE (UK) PLC § | | |
| § | | |
| Plaintiff § | | |
| § | CIVIL ACTION NO. 4:10-cv-02060 | |
| vs. § | | |
| § | RULE 9(h) ADMIRALTY | |
| § | | |
| TICO TIME MARINE, LLC § | | |
| § | JURY DEMANDED | |
| Defendant § | | |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO DISMISS

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, **TICO TIME MARINE, LLC,** Defendant in the above-entitled and numbered cause of action and files this its Response to Plaintiff's Motion to Dismiss, and would respectfully show unto the Honorable Court as follows:

### I.
### "PROCEDURAL FENCING" AND "FORUM MANIPULATION" BY GREAT LAKES

Plaintiff has a history of wrongfully denying coverage, cancelling policies, and seeking declaratory relief in an effort to engage in conduct amounting to "procedural fencing" and "forum manipulation." Specifically, in a synonymous case, after having received notice of potential litigation pursuant to Texas's pre-suit notice requirement, Plaintiff filed a similar action seeking a declaratory judgment of no liability for damages sustained by the subject vessel.[1] Notably, both

---

[1] *See Great Lakes Reinsurance (UK) PLC v. Spielvogel*, No. H-06-0982, 2006 U.S. Dist. LEXIS 39237 (S.D. Tex., 2006) (Memorandum and Order; Judge Ellison presiding).

cases involved the same policy language and contained virtually identical causes of action.[2] As in the instant case, Great Lake's Original Complaint and Request for Declaratory Judgment sought to invoke the Court's jurisdiction to seek relief "*as this matter involves a dispute relative to a marine insurance contract.*"[3]

In dismissing Plaintiff's declaratory judgment action, Judge Ellison noted "it also appears likely that Plaintiff brought this declaratory action before Defendant was legally able to file his state court action under the pre-suit notice requirement, which courts have found to be indicative of improper 'procedural fencing.'"[4] Notably, Great Lakes in the instant case did not wait to receive Defendant's pre-suit notice letter, but elected to file suit the same day it sent a denial letter to Defendant, June 11, 2010.[5]

## II.
## MARITIME INSURANCE CONTRACT

This case involves counterclaims based both in tort and a dispute arising under a maritime insurance contract. The subject maritime insurance contract contains a choice of law provision, which reads as follows:

---

[2] *Compare Id. and* Defendant Tico Time Marine, LLC's Original Answer and Counterclaims, Document No. 6.

[3] *Compare* Plaintiff's Original Complaint and Request for Declaratory Judgment, Document No. 1; *with* Plaintiff's Original Complaint for Declaratory Judgment, Document No. 2 (filed in Civil Action No. 3:06-cv-00022; *Great Lakes Reinsurance (UK) PLC v. Spielvogel*; In the United States District Court for the Southern District of Texas).

[4] *See Great Lakes Reinsurance (UK) PLC v. Spielvogel*, No. H-06-0982, 2006 U.S. Dist. LEXIS 39237, *7 (S.D. Tex., 2006) (Memorandum and Order; Judge Ellison presiding).

[5] *See* Exhibit "1" (Denial Letter; June 11, 2010).

> It is hereby agreed that **any dispute arising hereunder** shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, **this insuring agreement is subject to the substantive laws of the state of New York.**[6]

When analyzing the application of federal admiralty law to maritime insurance contracts, the United States Supreme Court recognizes that "in the field of maritime contracts as in that of maritime torts, the National Government has left much regulatory power in the States."[7] Consequently, the regulation of marine insurance is properly left with the States.[8] Because the instant maritime contract contains a choice of law provision, specific choice of law rules govern marine insurance disputes.

### III.
### CHOICE OF LAW ANALYSIS

In maritime cases, general federal maritime choice of law rules must apply.[9] Therefore, a choice of law analysis "generally requires the application of the law of the state with the 'most significant relationship' to the substantive issue in question."[10] Notably, whether the choice of law rules that specifically govern maritime insurance disputes or Texas choice of law principles are

---

[6] See Exhibit "2" at 13 of 14, ¶11 (Maritime Insurance Contract; September 15, 2009).

[7] See *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313 (1955); *AGIP Petroleum Co., Inc. v. Gulf Island Fabrication, Inc.*, 920 F.Supp. 1318, 1323 (S.D. Tex., 1996).

[8] *Id.* at 321.

[9] See *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 890 (5th Cir.1991); *AGIP Petroleum Co., Inc.*, 920 F.Supp. at 1323.

[10] See *id.* at 891 (citing Restatement (Second) of Conflict of Laws §6 (1980)); *AGIP Petroleum Co., Inc.*, 920 F.Supp. at 1324.

applied, the test is the same.[11] Thus, it is mandatory that the law of the state with the "most significant relationship" to the particular substantive issue in question be applied.[12] The Fifth Circuit, applying Texas law, expressly recognizes that "parties cannot require that their contract be governed by the law of a jurisdiction which has no relation whatever to them or their agreement. And they cannot by agreement thwart or offend the public policy of the state the law of which ought otherwise to apply."[13]

A.  **Most Significant Relationship: Texas vs. New York**

Where a maritime contract contains a choice of law clause, the state law chosen by the parties will apply "'unless [1] the state has no substantial relationship to the parties or the transaction, **or** [2] the state's law conflicts with the fundamental purposes of maritime law.'"[14] In the instant case, the parties argue between the application of Texas law or New York law in interpreting and enforcing the subject maritime insurance contract. Not only does there not exist a "substantial relationship," but there exist **no relationship** with the state of New York.

---

[11] See Hull & Co., Inc. v. Chandler, 889 S.W.2d 513, 517 (Tex.App.–Houston [14th Dist.] 1994, writ denied) (citing Albany Ins., 927 F.2d at 891 and Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 421 (Tex.1984)).

[12] Id.

[13] See Int'l Interests, L.P. v. Hardy, 448 F.3d 303, 306-07 (5th Cir.2006) (citing DeSantis v Wackenhut Corp., 793 S.W.2d 670, 677 (Tex. 1990)).

[14] See Clayton Williams Energy, Inc. v. Nat'l Union Fire Ins. Co. of La., No. 03-2980, 2004 WL 2452780, at *4 (E.D.La. Nov. 1, 2004) (quoting Campbell v. Sonat Offshore Drilling, 979 F.2d 1115, 1126 (5th Cir.1992)), affm'd, 2006 WL 14848, 161 Fed.Appx. 378 (5th Cir.2006); AGIP Petroleum Co., Inc., 920 F.Supp. at 1324.

In the instant case, it is undisputed that Defendant is owned and operated by Texas residents and sought insurance coverage for the M/V Tico Time II.[15] Subsequently, insurance was placed with Osprey Special Risks Limited, serving as the agent for the underwriter, Great Lakes, whom are both located in the United Kingdom and are responsible for drafting the subject insurance agreement. Thereafter, the subject insurance policy was issued and delivered to Plaintiff in Texas.[16] Furthermore, the M/V Tico Time II sank while moored in its slip in Puntarenas, Costa Rica. Consequently, there is neither an implicit or explicit relationship between the parties or the transaction and the state of New York. Pursuant to both federal admiralty law and Texas law, the choice of law inquiry ends at this juncture and Texas law is to be properly applied to both the maritime insuring agreement and Defendant's tort counterclaims, as Texas has the greatest interest in resolving the issues surrounding the policy.[17]

### B. New York Choice of Law: "Sham"

A party's choice of law will be held to be a sham when the contacts between the transaction and the chosen state are not reasonably related or when the contacts themselves are contrived in order to substantiate the choice of law.[18] Clearly, Plaintiff's choice of New York law is a sham

---

[15] *See* Exhibit "5" (Affidavit of Defendant's President/Managing Member, Dennis Wilkerson; August 20, 2010).

[16] *See* Exhibit "2" at Policy Endorsement cover page (Maritime Insurance Contract; September 15, 2009).

[17] *See Wilburn Boat Co.*, 348 U.S. at 313, 321; *Albany Ins. Co.*, 927 F.2d at 886-87, 890-91; *Int'l Interests, L.P.*, 448 F.3d at 306-07; *AGIP Petroleum Co., Inc.*, 920 F.Supp. at 1324; *Stier v Reading & Bates Corp.*, 992 S.W.2d 423, 433 (Tex. 1999); *DeSantis*, 793 S.W.2d at 677-78; and *Hull & Co., Inc. v. Chandler*, 889 S.W.2d at 517-18.

[18] *See Cook v Frazier*, 765 S.W.2d 546, 549 (Tex. App. - Ft. Worth 1989, no writ); *Stuart v Spademan*, 772 F.2d 1185, 1195 (5th Cir. 1985); *Interfirst Bank Clifton v Fernandez*, 853 F.2d

because there has never been a connection between New York and the parties or transactions involved in the instant case. Therefore, Plaintiff's unsupported and impermissible request for application of New York law should be properly denied by this Honorable Court.

C.     **Substantial and Legitimate Interest of Texas:**

It is well recognized that "Texas has a strong interest in the protection of its citizens against the overbearing tactics of insurance underwriters."[19] The Texas Legislature has taken care to enact statutory directives in an effort to protect its residents under Texas law in matters involving interpretation and enforcement of insurance agreements.

1.     **Statutory Regulation of Marine Insurance:**

While specifically pertaining to the applicable law governing insurance contracts, the Texas Legislature requires that:

> **Any contract of insurance** payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State **shall** be held to *be a contract made and entered into under* and by virtue of *the laws of this State* relating to insurance, and governed thereby, [...][20]

Significantly, Great Lakes holds a license to do business in the State of Texas through the Texas Department of Insurance since 1989.[21] Conversely, Great Lakes holds no such insurance license to

---

292, 294 (5th Cir. 1988); *Woods-Tucker Leasing Corp. v Hutcheson-Ingram*, 642 F.2d 744, 753 (5th Cir. 1981).

[19] *See Albany Ins. Co.*, 927 F.2d at 891.

[20] *See* TEX. INS. CODE Art. 21.42; *Valley Forge Ins. Co. v. Shah*, No. CIV A H-05-3056, 2007 WL 737490, at *5 (S.D. Tex., 2007); *Am. Home Assurance Co. v. Safway Steel Prod. Co., Inc.*, 743 S.W.2d 693, 697 (Tex.App.–Austin 1987, writ denied).

[21] *See* Exhibit "**3**" (Texas Department of Insurance company profile for Great Lakes Reinsurance (U.K.) PLC; https://wwwapps.tdi.state.tx.us/pcci/pcci_search.jsp).

do business in the State of New York.[22] Accordingly, the analysis pertaining to which States' law applies to the subject insurance contract is expressly determined by virtue of the interests of Texas in protecting its citizens from the "overbearing tactics of insurance underwriters."[23] Because federal admiralty law recognizes that regulation of marine insurance is to be left with the States, then the laws of Texas must without question govern the subject marine insurance agreement in this case.[24]

### 2. Breach of Insurance Contract: Conflict of Law and Public Policy

Contrary to the laws and interests of Texas, application of the subject New York choice of law provision would be in violation of Texas public policy, as it would allegedly prohibit recovery of attorney's fees for Plaintiff's breach of the insuring agreement. Contractual choice of law provisions are not enforced in Texas if the law of the chosen state violates a fundamental public policy of Texas.[25] "Public policy" has been defined by the Texas Courts of Appeals as being the laws of Texas "as embodied in its constitution, statutes, decisions of its courts, and the administrative practices of its state's officers."[26]

---

[22]*See* Exhibit "4" (New York State Insurance Department company profile search results for Great Lakes Reinsurance (U.K.) PLC; https://awebproxyprd.ins.state.ny.us/onepage/servlet/FWControllerServlet?mvcapp=FWMyOnePage&command=myonepage&rid=1&b=i&sid=950508N8018091Y03121118&b=i&tabset=1&temp=3&p=1&taborder=1&fp=1).

[23]*See Albany Ins. Co.*, 927 F.2d at 891.

[24]*See Wilburn Boat Co.*, 348 U.S. at 313, 321; *Albany Ins. Co.*, 927 F.2d at 886-87, 890-91; *Int'l Interests, L.P.*, 448 F.3d at 306-07; *AGIP Petroleum Co., Inc.*, 920 F.Supp. at 1324; *Stier v Reading & Bates Corp.*, 992 S.W.2d 423, 433 (Tex. 1999); *DeSantis*, 793 S.W.2d at 677-78; and *Hull & Co., Inc. v. Chandler*, 889 S.W.2d at 517-18.

[25]*See DeSantis*, 793 S.W.2d at 677-78.

[26]*See Am. Home Assurance Co.*, 743 S.W.2d at 703 (citing *Dairyland County Mut. Ins. Co. v. Wallgren*, 477 S.W.2d 341-42 (Tex. Civ. App.–Austin 1972, writ ref'd n.r.e.)) *Locomotive Eng'rs and Conductors Mut. Protective Ass'n v. Bush*, 576 S.W.2d 887, 890 (Tex. Civ.

Because the Texas Legislature determines public policy, the courts are required to look to state statutes to determine public policy.[27] Texas statutorily permits the recovery of reasonable attorney's fees for breach of contract actions.[28] Furthermore, the Texas Legislature statutorily permits recovery of attorney's fees for actions involving violations of insurance agreements and proscribed practices, the violations of which are themselves a breach of the underlying insuring contract.[29] Thus, it would be incongruent to reason that denial of attorney's fees as a remedy available to a Texas resident would not be in express violation of public policy, as otherwise embodied by the Texas Legislature for the protection of its citizens from the "overbearing tactics of insurance underwriters."[30]

3. **Contractual Choice of Law Does Not Preclude Texas Torts:**

As previously set forth, Texas law applies to the subject insuring agreement and the choice of law analysis should continue no further. However, should it occur that Texas law is set aside, then it is well established that when a contractual choice of law provision by its terms applies only to the interpretation and enforcement of the contract, it will not be applied to a cause of action sounding

---

App.–Tyler 1979, n.w.h.).

[27] See *Westchester Fire Ins. Co. v. Admiral Ins. Co.*, 152 S.W.3d 172, 182 (Tex. App.–Fort Worth 2004, n.w.h.) (citing *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex.2000) and *Stubbs v. Ortega*, 977 S.W.2d 718, 722 (Tex. App.–Fort Worth 1998, pet. denied)); *Jankowiak v. Allstate Property & Casualty Ins. Co.*, 201 S.W.3d 200, 210 (Tex. App.–Houston [14th Dist.] 2006, n.w.h.).

[28] See TEX. CIV. PRAC. & REM. CODE §38.001.

[29] See TEX. INS. CODE §541.152.

[30] See *Albany Ins. Co.*, 927 F.2d at 891.

in tort.[31] As previously set forth, the subject maritime insurance contract contains a choice of law provision, which reads as follows:

> It is hereby agreed that **any dispute arising hereunder** shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, <u>**this insuring agreement**</u> **is subject to the substantive laws of the state of New York.**[32]

There exists no ambiguity that the narrow scope of the choice of law provision is strictly limited to "*this insuring agreement*" and "*any dispute arising hereunder.*"

The Texas Supreme Court holds that tort claims are not governed by the choice of law provision in a contract because they are independent of the breach of contract action.[33] In *Stier*, the plaintiff relied on his employment contract to argue that his federal tort claims should be governed by Texas law. His employment contract stated that "this agreement shall be interpreted and enforced in accordance with the laws of the State of Texas, USA."[34] The court recognized that his federal "tort" claims "do not rise or fall on the interpret[ation] and enforce[ment] of any contractual provision" and are not governed by the choice of law provision.[35] The court creates an example to emphasize its point: "suppose that Stier were a resident of Illinois and his employment agreement provided that it was to be governed by the laws of Illinois. And assume that during a visit to

---

[31] *See Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726-27 (5th Cir.2003); *Stier v Reading & Bates Corp.*, 992 S.W.2d 423, 433 (Tex. 1999).

[32] *See* Exhibit "2" at 13 of 14, ¶11 (Maritime Insurance Contract; September 15, 2009).

[33] *See Stier v Reading & Bates Corp.*, 992 S.W.2d 423, 433 (Tex. 1999).

[34] *Id.*

[35] *Id.*

9

Reading & Bates's offices in Texas, Stier slipped and fell on its premises because of an unreasonably dangerous condition that was known to his employer. We would not say that Illinois law applied to Stier's tort claim."[36] If the tort (or other claims) are independent of the contract, the choice of law provision will not apply.[37]

This line of reasoning has been followed closely by Texas courts of appeals. In *Smith v Foodmaker*, the Ft. Worth Court of Appeals held that a choice of law provision in a franchise agreement did not apply to a murder victim's family's tort claims because the victim and his family were not governed by the franchise agreement.[38] In *Fairmont Supply Co. v Hooks Indus., Inc.*, a Houston Appeals Court held that because Hooks' attorney's fees claim *does* rise and fall on the successful prosecution of the breach of contract action, the choice of law provision in the contract does apply to the claim for attorney fees.[39]

Defendant's counterclaims of Negligence, DTPA, Bad Faith, and Texas Insurance Code violations do not "rise or fall" on the contractual language, as they are valid independent torts recognized under Texas law for the benefit of Texas residents. Consequently, those independent claims cannot be controlled by the subject choice of law provision as a matter of law.

---

[36] *Id.*

[37] *Id.*; *See also Smith v EMC Corporation*, 393 F.3d 590, 597 (5th Cir.) 2004; *See Thompson & Wallace of Memphis, Inc. v Falconwood Corp.*, 100 F.3d 429, 433 (5th Cir. 1996); *See Caton v Leach Corp.*, 896 F.2d 939, 943 (5th Cir. 1990).

[38] *See Smith v Foodmaker*, 928 S.W.2d 683, 685 (Tex. App. - Ft. Worth 1996, no writ).

[39] *See Fairmont Supply Co. v Hooks Indus., Inc.*, 177 S.W.3d 529, 535 (Tex. App. - Houston [1st Dist.] 2005).

## IV.
## FEDERAL PREEMPTION: LACK OF ADMIRALTY JURISDICTION

Notably, Plaintiff cannot, and does not, cite a single federal statute, United States Supreme Court opinion, Fifth Circuit opinion, Texas Federal District court opinion, or Texas state statute or court opinion to support its allegation of federal preemption. Plaintiff attempts to claim that the subject insurance policy is a maritime contract, and therefore is subject to federal preemption, as it falls within this Court's admiralty jurisdiction.

**A.     No Admiralty Jurisdiction Over State Tort Claims:**

It is well recognized that deceptive trade practice claims sound in tort.[40] In order for a court to exercise admiralty jurisdiction over a tort claim, the "activity from which the claim arises 'must satisfy conditions both of location and of connection with maritime activity.'"[41] Therefore, Plaintiff must show that the alleged "tort was committed on navigable water or the injury suffered on land must have been caused by a vessel on navigable water."[42]

As in *Dinn*, just because the contract (insurance policy) between Great Lakes and Tico Time Marine, LLC may be considered a maritime contract, it does not necessarily follow that Defendant's DTPA and Insurance tie-in claims are maritime torts subject to the court's admiralty jurisdiction.[43]

---

[40] *See Dinn v. Hooking Bull Boatyard*, No. C-08-309, 2009 U.S. Dist. LEXIS 60702, at *19 (S.D. Tex., 2009) (Memorandum and Order; Judge Rainey presiding) (citing *Continental Dredging, Inc. v. De-Kaizered, Inc.*, 120 S.W.3d 380, 391 (Tex. App.– Texarkana 2003, pet. denied)).

[41] *See Id.* at *20 (citing *Scarborough v. Clemco Industries*, 391 F.3d 660, 663 (5th Cir. 2004)).

[42] *See Id.* (citing *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995)).

[43] *See Id.* at *21.

11

Defendant's counterclaims pertaining to DTPA and Insurance tie-in claims include misrepresentations made by Plaintiff prior to the policy having been issued and continuing prior to issuing any subsequent renewals. For example, Plaintiff misrepresented to Defendant that coverage would be in place for any accidental physical loss or damage to the vessel. However, when accidental loss or damage occurred, Plaintiff relied on language and terms outside the policy to deny coverage and cancel the policy.[44] Had Defendant known that coverage for accidental loss or damage was open to the subjective interpretation of absent terms from the policy, then Defendant would never had agreed to accept insurance from such an untrustworthy underwriter.[45]

Such misrepresentations Plaintiff now relies on for simultaneously denying the claim, cancelling the policy, and bringing the instant action for declaratory relief. The DTPA and Insurance tie-in violations did not occur on navigable waters and this is not a case where an injury on land was caused by a vessel on navigable water.[46] Consequently, even if there may be "some connection between the alleged tort and traditional maritime activity, the location test for admiralty jurisdiction is not satisfied in this case...Accordingly, maritime law and its general prohibition against attorney's fees does not apply."[47] Plaintiff has offered no evidence that any of the events giving rise to Plaintiff's DTPA and Insurance tie-in claims occurred on navigable water.

---

[44] *See* Exhibit "**5**" (Affidavit of Defendant's President/Managing Member, Dennis Wilkerson; August 20, 2010).

[45] *Id.*

[46] *See Dinn v. Hooking Bull Boatyard*, No. C-08-309, 2009 U.S. Dist. LEXIS 60702, at *22 (S.D. Tex., 2009) (Memorandum and Order; Judge Rainey presiding)(citing *Crowley Liner Services, Inc. v. Transtainer Corp.*, 2007 U.S. Dist. LEXIS 8332, at *6 (S.D. Fla., 2007)).

[47] *Id.*

## V.
## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Defendant, TICO TIME MARINE, LLC, respectfully requests that this Court deny Plaintiff's, Great Lakes Reinsurance (UK) PLC, Motion to Dismiss, and grant any other relief, general or special, at law or in equity, to which Defendant may show itself to be justly entitled.

Respectfully submitted,

THE COLLINGS LAW FIRM, PLLC

By: _____
Chris D. Collings
Texas Bar No. 24036382
Southern District Bar No. 34249
Tanya Y. Niblett
Texas Bar No. 24065823
Southern District Bar No. 973363
440 Louisiana Street, Suite 1450
Houston, Texas 77002
Telephone: (713) 337-1180
Fax: (713) 337-1179

ATTORNEYS IN CHARGE FOR
DEFENDANT TICO TIME MARINE, LLC

**CERTIFICATE OF SERVICE**

    I hereby certify that service of the foregoing was on this date automatically accomplished on all known Filing Users through the Notice of Electronic Filing. Service on any party or counsel who is not a Filing User was accomplished via Email, Facsimile, Certified Mail/RRR or U.S. First Class Mail, in accordance with the Federal Rules of Civil Procedure on this the 20th day of August, 2010.

Timothy W. Strickland
Mark E. Lewis
Fowler Rodriguez Valdez-Fauli
4 Houston Center, Suite 1560
1331 Lamar
Houston, Texas 77010

                                                           Chris D. Collings