UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GREAT LAKES REINSURANCE (UK) PLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:10-CV-2060 |
| | § | RULE 9(H) ADMIRALTY |
| TICO TIME MARINE LLC, | § | |
| | § | |
| *Defendant*. | § | |

## ORDER

Pending before the court is plaintiff Great Lakes Reinsurance (UK) PLC's ("Great Lakes") motion to dismiss, in part, defendant Tico Time Marine LLC's ("TTM") counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 7. On consideration of the motion, the replies and responses, and the applicable law, plaintiff's motion to dismiss in part is GRANTED IN PART. Defendant's counterclaims arising under the Texas Deceptive Trade Practices Act and Texas Civil Practice and Remedies Code are DISMISSED with prejudice.

### I. BACKGROUND

Great Lakes is an insurance company based in the United Kingdom, but authorized to sell insurance in several of the United States, including Texas. TTM is an entity organized under the laws of Texas and headquartered in Spring, Texas. In 2005, TTM purchased a marine insurance policy from Great Lakes for TTM's vessel, the M/V Tico Time II. Dkt. 1, at 2. The policy was renewed annually, and remained in effect through 2010. *Id.* The policy contained a choice of law clause, which provided:

> It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.

Dkt. 7, Ex. A, at 13.

On May 25, 2010, while the vessel was moored at Puntarenas, Costa Rica, the captain attempted to repair an exhaust leak on the vessel. Dkt. 6, at 4. The captain inserted an inflatable plug into the exhaust line to prevent ingress of sea water, and then took a component on shore to be repaired. *Id.* When the captain returned several hours later, the vessel was partially submerged. *Id.* TTM filed a claim with Great Lakes the next day. Great Lakes denied coverage on June 11, 2010. *Id.* at 4–5. That same day, Great Lakes brought this action, seeking a declaration that Great Lakes has no duty to provide coverage under the policy. Dkt. 1. TTM then filed a counterclaim for breach of contract, violations of the Texas Deceptive Trade Practices Act ("DTPA"), violations of the Texas Insurance Code, attorneys' fees under the Texas Civil Practice and Remedies Code ("CPRC"), breach of the duty of good faith and fair dealing, and negligence. Dkt. 6.

Great Lakes now moves for dismissal of TTM's claims arising under the Texas Insurance Code, DTPA, and CPRC because they are based on Texas law, and therefore precluded by the choice of law clause in the policy. Dkt. 7. TTM argues that its claims are valid in spite of the choice of law clause, asserting that the clause should not be enforced because the state of New York has no significant relationship to the parties or transaction. Dkt. 9. TTM also argues that the choice of law clause applies only to the contract itself, and that the separate tort claims are not subject to the clause. *Id.*

## II. DISCUSSION

**A.     Standard for Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The court is to accept all well-pleaded facts as true and view them in the light most favorable to the nonmovant. *Capital Parks, Inc. v. Se. Adver. & Sales Sys., Inc.*, 30 F.3d 627, 629 (5th Cir. 1994). The plaintiff is not required to plead specific facts relating to his claim to survive a 12(b)(6) motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). However, a plaintiff's obligation to plead sufficient facts "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The plaintiff is required to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

**B.     Analysis**

   *1.     Applying the Choice of Law Clause*

The initial inquiry for the Court is whether New York, Texas, or federal admiralty law applies to this case. "Although a federal court customarily applies the choice of law rules of the forum in which it is located, the court in maritime cases must apply general federal maritime choice of law rules." *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 890 (5th Cir. 1991) (internal citation omitted) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 1021 (1941); *Gonzalez v. Naviera Neptuno A.A.*, 832 F.2d 876, 880 n.3 (5th Cir. 1987)). "Under federal maritime choice of law rules, contractual choice of law provisions are generally recognized as valid and enforceable." *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 242 (5th Cir. 2009). In the context of a marine insurance contract, "'[a] choice of law provision . . . will be upheld in the

absence of evidence that its enforcement would be unreasonable or unjust.'" *Id.* (quoting 2 SCHOENBAUM, ADMIRALTY AND MARITIME LAW 276 (4th ed. 2004)). The law selected in a choice of law clause will govern "unless the state has no substantial relationship to the parties or the transaction or the state's law conflicts with the fundamental purposes of maritime law." *Stoot v. Fluor Drilling Servs., Inc.*, 851 F.2d 1514, 1517 (5th Cir. 1988) (citing *Hale v. Co-Mar Offshore Corp.*, 588 F. Supp. 1212, 1215 (W.D. La. 1984)).

TTM argues that New York is not sufficiently connected to the parties or transaction, and that the choice of law clause should not be enforced. In order to prevail on this argument, TTM must show that New York lacks a substantial relationship to both the parties and the transaction. *Stoot*, 851 F.2d at 1517. The Fifth Circuit has already determined that Great Lakes, which has bank and trust accounts and its registered agent for service in New York, has a substantial relationship with New York. *Great Lakes*, 585 F.3d at 244 (enforcing the same choice of law clause and finding that Great Lakes has a substantial relationship with New York); *see also Great Lakes Reinsurance (UK) PLC v. S. Marine Concepts, Inc.*, No. 3:07-cv-276, 2008 WL 6523861 (S.D. Tex. Oct. 21, 2008) (same). TTM has offered no evidence to the contrary. Thus, there is a substantial relationship between Great Lakes and New York.

The court may also decline to enforce the clause if it conflicts with the fundamental purposes of maritime law. *Stoot*, 851 F.2d at 1517. Although TTM argues that application of New York or federal admiralty law would be contrary to *Texas* public policy, it has failed to show that application of New York law would conflict with the fundamental purposes of *maritime* law, as expressed in *Stoot*. Therefore, well-established principles of federal admiralty law will apply, and in the absence of such principles, New York law will apply.

TTM requests attorneys' fees pursuant to Section 38.001 of the Texas Civil Practice and Remedies code. Because the contract itself and any breach of contract action arising therefrom is subject to admiralty or New York law, not Texas law, TTM's claim for attorneys' fees under the Texas statute must be dismissed.

*2.     Scope of the Choice of Law Clause*

TTM argues that, even if the choice of law clause is enforced, its counterclaims under the DTPA and Insurance Code are extracontractual torts that are not subject to the contractual choice of law provision. The choice of law clause at issue provided that federal admiralty or New York law was to apply to "any dispute arising hereunder." The court now considers whether TTM's claims under the DTPA and Texas Insurance Code are subject to the choice of law clause.

Interpretation of the contract is subject to the laws of New York. The leading New York case on the scope of choice of law clauses is *Knieriemen v. Bache Halsey Stuart Shields Inc.*, 427 N.Y.S.2d 10 (App. Div. 1980), *overruled on other grounds*, *Rescildo v. R.H. Macy's*, 594 N.Y.S.2d 139 (App. Div. 1993). In *Knieriemen*, the contract at issue contained a clause that provided: "[t]his contract shall be governed by the laws of the State of New York." *Knieriemen*, 427 N.Y.S.2d at 12. The court held that the choice of law clause did not apply to the related tort claims. *Id.* at 12–13 ("That the parties agreed that their contract should be governed by an expressed procedure does not bind them as to causes of action sounding in tort . . . ."). The Second Circuit more recently noted that "*Knieriemen* indicates a reluctance on the part of New York courts to construe contractual choice-of-law clauses broadly to encompass extra-contractual causes of action." *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 334 (2d Cir. 2005). While it is possible that a choice of law clause could be drafted broadly enough to reach such tort claims, "no reported New

York cases present such a broad clause." *Id.* at 335 (citing *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996)).

The choice of law clause at issue here is not broad enough to as to encompass related tort claims. Had the parties intended the clause to extend to extracontractual torts, they could have included such a provision and eliminated any ambiguity; however, they did not. Consequently, the tort claims under the DTPA and Insurance Code are not governed by the choice of law provision.

### 3. *Choice of Law for Extracontractual Tort Claims*

Because the claims under the DTPA and Insurance Code are not subject to the choice of law provision in the contract, the Court must now consider which jurisdiction's law must apply. In the maritime context, courts are to apply general federal maritime choice of law rules. *Kieu*, 927 F.2d at 890 (citing *Gonzalez v. Naviera Neptuno A.A.*, 832 F.2d 876, 880 n.3 (5th Cir. 1987)). "Modern choice of law analysis, whether maritime or not, generally requires the application of the law of the state with the 'most significant relationship' to the substantive issue in question." *Id.* at 891 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1980)).

Although this Court has determined that there are sufficient connections with New York to enforce the choice of law clause with respect to the breach of contract claim, this is not determinative of the choice of law analysis for the extracontractual torts. In this case, the policy was signed and delivered in Texas, and TTM is based in Texas. Although Great Lakes has connections with New York, the instant *transaction* is more closely connected to Texas. The Fifth Circuit has recognized that "Texas has a strong interest in the protection of its citizens . . . against the overbearing tactics of insurance underwriters." *Kieu*, 927 F.2d at 891. In light of Texas' strong interest in regulating marine insurance contracts and protecting its citizens, and of the particular facts of this case, Texas

6

has the most significant relationship to the actions giving rise to the alleged violations of the DTPA and Insurance Code. Thus, Texas law applies.

However, even under Texas law, TTM's claims under the DTPA fail. Under Texas law, "[a]n allegation of a mere breach of contract, without more, does not constitute a 'false, misleading or deceptive act' in violation of the DTPA." *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex. 1996) (quoting *Ashford Dev., Inc. v. USLife Real Estate Servs.*, 661, S.W.2d 933, 935 (Tex. 1983)); *see also Helms v. Sw. Bell Tel. Co.*, 794 F.2d 188, 191 (5th Cir. 1986) (dismissing a DTPA claim because "[t]he 'misrepresentation' alleged by the [plaintiff] was nothing more than [defendant's] failure to perform its promise"). An alleged DTPA claim is essentially a breach of contract claim if the claimant alleges no damages independent of its contractual injuries. *E.g.*, *Metro. Life Ins. Co. v. Haden & Co.*, 158 F.3d 584, at *7 (5th Cir. 1998) (unpublished table decision) ("[R]epresentations that one will fulfill a contractual duty which one later fails to perform does not constitute misrepresentation, but rather the breach of a contractual duty.") (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998)).

TTM brings claims for breach of contract, breach of the duty of good faith and fair dealing, negligence, and violations of the DTPA and Texas Insurance Code. TTM alleges that the tort claims are wholly distinct from the contract because they do not "rise or fall" on the contractual language. Dkt. 9, at 10.

Under the Insurance Code, TTM alleges five different violations: (1) failure to settle; (2) failure to provide a reasonable explanation for denying a claim; (3) failure to conduct a reasonable investigation; (4) misrepresenting an insurance policy; and (5) failing to pay a valid

7

claim. Plaintiff's motion to dismiss the defendant's counterclaim under the Texas Insurance Code is denied.

The essence of TTM's DTPA claim is that Great Lakes failed to pay under the insurance policy when the M/V Tico Time II was damaged. TTM alleges no economic damages outside of the subject matter of the contract. Therefore, TTM's claim arising under the DTPA is merely a reworded claim for breach of contract, and must be dismissed.

### III. Conclusion

After review of Great Lakes' motion to dismiss, in part, pursuant to Rule 12(b)(6), the court concludes that TTM's claims under the DTPA and CPRC are claims for which relief may not be granted, and therefore must be dismissed. Accordingly, Great Lakes' motion to dismiss, in part, is GRANTED IN PART, and TTM's claims under the DTPA and CPRC are DISMISSED with prejudice. Furthermore, Great Lakes' motion to dismiss TTM's claims under the Texas Insurance Code is DENIED.

It is so ORDERED.

Signed at Houston, Texas on October 12, 2010.

_____
Gray H. Miller
United States District Judge