UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GREAT LAKES REINSURANCE (UK) PLC, | § | |
| | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:10-CV-2060 |
| | § | RULE 9(H) ADMIRALTY |
| TICO TIME MARINE LLC, | § | |
| | § | |
|     *Defendant*. | § | |

**ORDER**

Pending before the court is plaintiff Great Lakes Reinsurance (UK) PLC's ("Great Lakes") motion to reconsider the court's order granting in part and denying in part its motion dismiss, in part, defendant Tico Time Marine LLC's ("TTM") counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 19. After considering the motion, response, the original order and related documents, and the applicable law, the court is of the opinion that the motion to reconsider should be GRANTED.

**I. BACKGROUND**

Great Lakes brought its original complaint against TTM seeking a declaration that it has no obligation to reimburse TTM for losses arising out of the sinking of M/V TICO TIME II on May 5, 2010. Dkt. 1. TTM brought counterclaims against Great Lakes for various violations of the Texas Deceptive Trade Practices Act ("DTPA") and the Texas Insurance Code, breach of contract, attorneys fees as permitted by the Texas Civil Practices and Remedies Code ("CPRC"), breach of the common-law duty of good faith and fair dealing, and negligence. Dkt. 6. Great Lakes moved to dismiss all of the Texas statutory claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 7. Great Lakes' motion to dismiss turned on the terms of the choice-of-law provision contained within the marine insurance policy that it entered into with TTM. *See* Dkt. 7; Dkt. 7, Exh. 1

(Insuring Agreement). The choice-of-law clause reads: "It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the state of New York." Dkt. 19 (emphasis added).

In its order granting in part the motion to dismiss (Dkt. 17) ("Original Order"), the court ruled that interpretation of the clause must be pursuant to New York law and that, under New York law, the clause was not broad enough to encompass TTM's extracontractual tort claims, including its claims under the Texas Deceptive Trade Practices Act ("DTPA") and its claims under the Texas Insurance Code. Dkt. 17. However, the court dismissed the DTPA claims, anyway, because it found that the damages associated with the DTPA claims were not independent of the breach of alleged contractual injuries and therefore were not viable under Texas law. The court denied Great Lakes' motion to dismiss with regard to the Texas Insurance Code claims.

Great Lakes specifically requests that the court reconsider its decision not to dismiss the Texas Insurance Code claims. Great Lakes argues that the court erred in interpreting the scope of the choice-of-law clause under New York law, as the clause clearly states that the "well established, entrenched principles and precedents of substantive United States Federal Admiralty law" should govern, if such "well established, entrenched precedent exists." Dkt. 17 at 2. Alternatively, Great Lakes argues that the "arising under" language in the choice-of-law clause is broad enough, under New York law, to encompass the extracontractual tort claims and that, as such, New York law should apply if maritime law does not, and New York does not recognize the Texas Insurance Code claims.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 59 permits courts to reconsider a case on motion by a party. Although discretionary, this power is not "limitless." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). In fact, "[r]econsideration of a judgment . . . is an extraordinary remedy that should be used sparingly." *Id.* (citing 11 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2810.1, at 124 (2d ed. 1995)). Rule 59(e) "allow[s] a party to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). It does not create a forum for "rehashing evidence, legal theories, or arguments . . . ." *Id.*

## III. DOES MARITIME LAW APPLY?

In determining what law to apply, the court, sitting in admiralty, must apply federal maritime choice of law rules. *See Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 242 (5th Cir. 2009). Under federal maritime choice of law rules, "contractual choice of law provisions are generally recognized as valid and enforceable." *Id.* The choice-of-law provision here clearly requires the application of federal maritime law if the dispute "arises under" the contract and there is well-established, entrenched precedent relating to the disputed issues. The court must therefore determine if there is well-established, entrenched precedent under admiralty law for the issues at hand.

**A.     Interpretation of Marine Insurance Contracts.**

The "regulation of marine insurance is, in most instances, properly left with the states." *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 887 (5th Cir. 1991) (citing *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 75 S. Ct. 368 (1955)); *see also Wilburn Boat Co.*, 348 U.S. at 316 (noting that the "whole judicial and legislative history of insurance regulation in the United

3

States warns us against the judicial creation of admiralty rules to govern marine policy terms and warranties"). The "interpretation of a contract of marine insurance is–in the absence of a specific and controlling federal rule–to be determined by reference to appropriate state law." *Ingersoll-Rand Fin. Corp. v. Emp'rs Ins. of Wausau*, 771 F.2d 910, 912 (5th Cir. 1986). Moreover, the Fifth Circuit has, in "case after case, . . . applied state law in interpreting marine insurance policies, because there is no contrary federal admiralty rule." *INA of Tex. v. Richard*, 800 F.2d 1379, 1381 (5th Cir. 1986) (per curium) (listing cases).

**B.     Preemption**

Great Lakes argues, however, that there is well-entrenched federal admiralty precedent relating to the recovery of attorneys' fees, treble damages, and punitive damages and that this precedent conflicts with the state law claims at issue. Dkt. 19. Great Lakes therefore claims that the claims are preempted by well established admiralty rules. *Id.* However, in *INA of Texas*, the Fifth Circuit specifically noted that there "is no specific and controlling federal rule of law relating to attorney's fees in maritime insurance litigation"[1] and that it has "held that state law governs the propriety of treble damages for unfair handling of claims by marine insurers." *INA of Tex.*, 800 F.2d at 1381 (collecting cases); *see also Austin v. Servac Shipping Line*, 794 F.2d 941, 948 (5th Cir. 1986) ("Our review of admiralty law has not revealed, nor have the parties cited, any federal rule controlling the damages recoverable by an insured allegedly injured by the insurer's unfair acts in

---

[1] Great Lakes argues that "it is a well established maritime principle that, absent extraordinary circumstances not present here, parties are to bear their own attorney's fees and costs." Dkt. 19 at 4 (citing a case from the federal district court for the District of Connecticut). However, the Fifth Circuit, in *INA of Texas*, stated: "The *general* federal rule in admiralty is, of course, that attorney's fees may not be recovered absent statutory authorization. . . . But as our cases vividly illustrate, we have never held the general rule applicable in the context of marine insurance, which is *sui generis* because state law supplies the rule of decision." *INA of Tex.*, 800 F.2d at 1381 n.2 (citations omitted) (collecting cases); *see also All Underwriters v. Weisberg*, 222 F.3d 1309, 1313-14 (11th Cir. 2000) (extensively analyzing *INA of Texas* and a contrary Second Circuit opinion, determining that the Second Circuit opinion was "wrongly decided," and holding that "a district court may award attorney's fees pursuant to [a Florida insurance statute] against an insurer in a maritime insurance contract case").

4

the handling of a claim.").[2] The court therefore finds that there are no well established admiralty principles relating to the recovery of attorneys' fees, treble damages, and punitive damages in cases such as this.

## IV. DOES NEW YORK LAW APPLY?

Under the contract, if no well-established precedent exists under admiralty law, the "*insuring agreement* is subject to the substantive laws of the State of New York." Dkt. 7, Exh. A (emphasis added). This portion of the clause presents a contract interpretation question because, while it is clear that the agreement is subject to the substantive laws of the State of New York if there is no entrenched admiralty precedent, it is unclear whether *disputes arising under the contract* are subject to the substantive laws of New York if there is no entrenched federal precedent. The contract is thus ambiguous. The determination of which law should be consulted to resolve this ambiguity is far from clear, but this is not cause for concern because there is no conflict in the rules of contract interpretation of the three possible jurisdictions. Under maritime law, "a contract should be interpreted so as to give meaning to all of its terms–presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous." *Foster Wheeler Energy Corp. v. An Ning Jiang MV*, 383 F.3d 349, 354 (5th Cir. 2004) (internal quotations omitted). Under Texas law, the court must "read all parts of a contract together" and "must be particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract." *State Farm Life Ins. Co. v. Beaston*, 907 SW.2d 430, 433 (Tex. 1995). Under New York law, a "written contract will be read as a whole, and every part will be interpreted with

---

[2] The only controlling case that has not been overruled that Great Lakes cites, *Coastal Iron Works, Inc. v. Petty Ray Geophysical*, 783 F.2d 577, 582 (5th Cir. 1986) is not on point. In *Coastal Iron Works*, the Fifth Circuit was considering an indemnity issue, and the defendant argued that the red letter clause was invalid under the DTPA. *See id.* The court simply held that applying the DTPA would violate the red letter clause and thus would conflict with maritime law. *See id.* Great Lakes has not contended that application of the Texas statutes would violate a red letter clause.

reference to the whole; and if possible it will be interpreted as to give effect to its general purpose. . . . The meaning of a writing may be distorted where undue force is given to single words or phrases." *Westmoreland Coal Co. v. Entech, Inc.*, 100 N.Y.2d 352, 358 (N.Y. 2003) (internal quotations omitted) (ellipses in original). These rules are essentially the same and all lead to the conclusion that it is inappropriate to read the phrase "this agreement is subject to the substantive laws of the state of New York" in isolation. Instead, the phrase should be read in context with the first part of the clause, which applies to "disputes arising hereunder," and in consideration of the phrase that states "but where no such well established, entrenched precedent exists." It does not make sense to interpret the phrase that calls for the application of New York law when there is no entrenched maritime precedent as applying only to the agreement and not to the disputes arising under the agreement, because such an interpretation would leave no alternative for this class of claims, even though the provision clearly intends (by using the phrase "but where no such well established, entrenched precedent exists") to establish an alternative choice of law if there is no entrenched maritime law. Thus, under this cohesive reading of the provision, New York law applies to the agreement and disputes arising under the agreement when there is no well established, entrenched precedent under maritime law.

As explained in the Original Order, under New York law, a clause stating that the "*contract* shall be governed by the laws of the State of New York," does not encompass extracontractual torts. *Knieriemen v. Bache Halsey Stuart Shields Inc.*, 427 N.Y.S.2d 10 (App. Div. 1980), *overruled on other grounds, Rescildo v. R.H. Macy's*, 594 N.Y.S.2d 139 (App. Div. 1993). Great Lakes argues that the New York cases holding that extracontractual tort claims are not covered by a choice-of-law clause that requires the application of New York law to the "contract" are distinguishable because here the choice-of-law provision covers the contract and "any dispute arising hereunder." The court agrees that the choice-of-law provision here, when interpreted in accordance with the analysis

6

above, is broader than the clause in *Knieriemen*. However, it is not as broad as the clauses that New York courts have ruled include extracontractual torts. Specifically, New York courts have ruled that choice-of-law clauses that cover "all actions that pertain to 'any of the obligations arising under or related to'" the agreement or controversies "arising out of or relating to" the contract encompass tort claims. *See Turtur v. Rothschild Registry Int'l Inc.*, 26 F.3d 304, 309-10 (2d Cir. 1994); *Dichiara v. Ample Faith Investments Ltd.*, No. 06 Civ. 3838(DLC), 2006 WL 3431197, at *5 (S.D.N.Y. Nov. 29, 2006). It is also not as narrow as the clauses interpreted by New York courts, following *Knieriemen*, that merely require the application of New York law to the contract or agreement. *See, e.g.*, *Rosenberg v. Pillsbury Co.*, 718 F. Supp. 1146, 1150 (S.D.N.Y. 1989) (choice of law provision applied to "any and all performance thereunder, or breach thereof")*; Fustok v. Conticommodity Servs., Inc.*, 618 F. Supp. 1082, 1089 (D.C.N.Y. 1985) (choice of law provision applied to "enforcement of this agreement")*; Klock v. Lehman Bros. Kuhn Loeb* Inc., 584 F. Supp. 210, 215 (D.C.N.Y. 1984) (choice of law provision applied to "this agreement"); *Plymack v. Copley Pharm. Inc.*, No. 93 Civ. 2655 (KMW), 1995 WL 606272, at *5 (S.D.N.Y. Oct. 12, 1995) (choice of law provision applied to the "agreement").

The parties have pointed to no New York cases, and the court has found none, which consider whether New York law applies to tort claims if the choice of law provision applies to the agreement and disputes "arising under" the agreement but makes no mention of disputes "related to" the agreement. The court therefore must venture an *Erie* guess as to whether New York courts would hold that the tort claims at issue arose under the insurance agreement and are therefore encompassed within the choice-of-law provision. The alleged violations of the Texas Insurance Code include: (1) failure to settle; (2) failure to provide a reasonable explanation for denying a claim; (3) failure to conduct a reasonable investigation; (4) misrepresenting an insurance policy; and (5) failing to pay a valid claim. These claims would not exist if there were no underlying insurance

agreement. Thus, the court believes that New York courts would hold that these claims "arose under" the agreement and that the choice-of-law provision is broad enough to encompass the claims. The court therefore holds that the alleged violations of the Texas Insurance Code are subject to the substantive laws of New York. Since New York does not recognize Texas statutes, the claims must be dismissed.

## V. CONCLUSION

In sum, Great Lakes' motion for reconsideration (Dkt. 19) is **GRANTED**. The court has reconsidered its order granting Great Lakes motion in part and denying it in part (Dkt. 17) and determined that New York law applies to the Texas Insurance Code claims.[3] Since the claims are brought pursuant to a Texas, rather than New York, statute, they must be dismissed. Therefore, Great Lakes motion to dismiss defendant Tico Time Marine LLC's counterclaims (Dkt. 7) is hereby **GRANTED**, and TTM's counterclaims under the Texas Deceptive Trade Practices Act, Civil Practices and Remedies Code, and Texas Insurance Code, are **DISMISSED WITH PREJUDICE**.

Signed at Houston, Texas on March 16, 2011.

_____
Gray H. Miller
United States District Judge

---

[3] In reconsidering its interpretation of the choice-of-law provision, the court has determined that extracontractual tort claims fall within the choice-of-law provision and that, as such, New York law applies. Thus, New York law would apply to the DTPA claims as well as the Texas Insurance Code claims, and New York does not recognize these Texas statutory claims. With regard to the DTPA claims, the result is the same either way: dismissal of the DTPA claims.